**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-02151-CMA-KMT

BRIAN WOODS, individually, and
d/b/a LOG AND TIMBER HOMES OF SOUTHERN COLORADO,

      Plaintiff,

v.

NATIONBUILDERS INSURANCE SERVICES, INC. d/b/a NBIS, and
PROBUILDERS SPECIALITY INSURANCE COMPANY,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT ON THE DUTY TO DEFEND, DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO CERTIFY
QUESTION OF LAW**

---

      This matter is before the Court on Nationbuilder Insurance Services, Inc. d/b/a

NBIS and Probuilders Specialty Insurance Company ("Defendants'") Motion for

Summary Judgment, filed on November 15, 2011 (Doc. # 16), as well as Plaintiff Brian

Woods's ("Plaintiff") Cross-Motion for Partial Summary Judgment on the Duty to

Defend, filed on March 19, 2012.  (Doc. # 48.)  Additionally, this Order addresses

Plaintiff's Motion to Certify Question of Law, filed on December 1, 2011.  (Doc. # 17.)

These motions all concern the issue of whether Defendants had a duty to defend

Plaintiff in a wrongful death claim filed by a third party in Colorado state court.

# I. BACKGROUND

The following facts are undisputed, unless otherwise noted.  The Court will elaborate, as needed, in its analysis section.

Plaintiff is a citizen of Colorado who does business as Log and Timber Homes of Southern Colorado.  (Doc. # 2, ¶ 2.)  Defendants issued a commercial general liability insurance policy, Policy No. WPIC 5012241 ("the Policy"), to Plaintiff, effective from November 7, 2006 to November 7, 2007.  (Doc. # 2, ¶ 15; Doc. # 16-2 at 1.)  The Policy extended coverage for damages because of "bodily injury" caused by an "occurrence" that began during an applicable policy period.  (Doc. # 16-2 at 10.)  An "occurrence" is defined by the Policy as an "accident."  (*Id.* at 32.)

Although the Policy generally extends coverage for bodily injury, it excludes coverage for any such injury to "an employee of any insured arising out of and in the course of . . . [e]mployment by any insured; or [p]erforming duties related to the conduct of an insured's business."[1]  (Doc. # 16-2 at 12) (hereinafter, "the Employee Exclusion Clause.") (emphasis removed).

Additionally, the Policy contains a "Contractors Special Conditions" Endorsement, which provides, in relevant part:

> As a condition precedent to this policy applying to any claim in whole or in part based upon the work performed by independent contractors, the insured must have prior to the date of the loss giving rise to the claim:

[1]   For purposes of the Employee Exclusion Clause, the term "employee" includes "loaned, rented, leased or temporary employees, as well as persons who qualify, as borrowed servants or employees or persons who are or may be deemed employees of any insured under the doctrines of borrowed servant, borrowed employee, respondeat superior or any similar doctrine, or for whom any insured may be held liable as an employer." (*Id.* at 13)

> 1)   received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor; and
>
> 2)   obtained certificates of insurance from the independent contractor indicating that the insured is named as an additional insured and that coverage is maintained equal to or greater than provided by this policy with limits of at least $1,000,000 per occurrence.

(*Id.* at 6) (emphasis removed) (hereinafter "Special Endorsement").

In April of 2007, Plaintiff contracted with Arthur Thilquist Construction LLC ("Thilquist Construction") to provide services related to the construction of a log and timber single-family home, on a property owned by Haythem and Melissa Dawlett ("the Dawletts").  (Doc. # 2 at ¶ 10; Doc. # 47-1 at 1.)  Plaintiff signed a "Subcontract Agreement" ("Subcontract") outlining the working relationship between Thilquist Construction and Plaintiff, stating that Thilquist Construction was a "subcontractor" and an "independent contractor," and that it was not "an employee, servant, or agent" of Plaintiff.[2]  (Doc. # 47-1 at 23-24.)

On June 5, 2007, Arthur Thilquist ("Thilquist") passed away from injuries he sustained the day before while working on the construction on the Dawletts' home. (Doc # 16 at 3, ¶ 1.)  In September 2008, Plaintiff received a letter indicating that Thilquist's family and estate planned to file a lawsuit against him, and Plaintiff apprised Defendants of this notice.  (Doc. # 47-1 at 49-50.)

---

[2]   Although Thilquist Construction did not sign the Subcontract, the Court notes that "common law contract principles allow for the formation of contracts without the signatures of the parties bound by them." *Yaekle v. Andrews,* 195 P.3d 1101, 1107 (Colo. 2008).

3

On November 18, 2008, Defendants sent a reservation of rights letter to Plaintiff, indicating that they were investigating the claim relating to Thilquist's death and determining what duties, if any, they owed to Plaintiff under the Policy.[3]  (Doc. # 47-1 at 1.)  On June 3, 2009, Thilquist's estate filed a complaint against Plaintiff, *Mailly, et al. v. Brian Woods, et al.*, Case No. 2009CV99, in the District Court, Gunnison County, Colorado ("the underlying complaint").  (Doc. # 16-3.)  The underlying complaint alleged that Plaintiff (as well as the other defendants) failed to exercise due care, which was a "direct and proximate" cause of the fatal injury to Thilquist.  (*Id.*, ¶¶ 29-31.)  With regard to Thilquist's employment status, the underlying complaint alleged that Thilquist "was an employee of Brian Woods and the Dawletts, . . . and was engaged by them on a construction project to help erect a log and timber home.[4]  (*Id.,* ¶ 11).  Notably, the underlying complaint did not provide any factual allegations regarding the terms and conditions of Thilquist's "employee" status.  (*See generally id.*)

Plaintiff provided Defendants with a copy of both the unsigned Subcontract and the underlying complaint to assist in their investigation of Thilquist's estate's claims.  (Doc. # 16, ¶¶ 4, 8.)  By letter dated July 8, 2009, Defendants denied Plaintiff's coverage to Plaintiff of any claim relating to Thilquist's death.  (Doc. # 16-5 at 1-2.)  According to Defendants' letter, "the allegations in the complaint state Mr. Thilquist was a statutory employee of Log & Timber; the policy excludes coverage for any reason for

---

[3]   The reservation of rights letter stated that Thilquist was "an independent contractor hired by [Plaintiff] under a contract dated April 4, 2007 to frame a single family log cabin home located in Crested Butte, Colorado."  (Doc. # 47-1 at 1.)

[4]   The underlying complaint also seems to allege that Mike Fink, the sole proprietor of Mike Fink Construction, was also Thilquist's employer.  (*Id.*, ¶¶ 25, 30.)

an employee of the insured." (*Id.* at 1.)  Defendants also said that they were denying

the claim because the Policy required Plaintiff to obtain a certificate of insurance and

a written indemnity agreement from any subcontractors, which Plaintiff had allegedly

failed to do.  (*Id.* at 1-2.)  Because Defendants found that they did not owe Plaintiff a

duty to indemnify, Defendants also concluded that they had no duty to defend Plaintiff

in the underlying case.  (*Id.* at 11.)

In approximately June of 2011, Plaintiff entered into a settlement agreement with

Thilquist's estate in the underlying case, whereby Plaintiff agreed to arbitrate the issue

of damages in the underlying case and enter the arbitrator's award as a judgment in

the lawsuit.[5]  (Doc. # 16 at 5, ¶ 12.)  After the arbitrator awarded Thilquist's estate

$2,085,953.25, the state court confirmed the award and entered it as a judgment on

August 2, 2011.  (Doc. # 16-8 at 2.)

Plaintiff initiated the instant lawsuit when he filed his Complaint in Denver County

District Court on July 5, 2011.  (Doc. # 2.)  Plaintiff served Defendants with process on

July 18, 2011, and Defendants removed the case to federal court on August 17, 2011.

(Doc. # 1.)  Defendants filed the instant Motion for Summary Judgment on November,

15, 2011.  (Doc. # 16.)  Plaintiff responded on March 19, 2012, and Defendants replied

on April 16, 2012.  (Doc. ## 47, 51.)  On the same day that Plaintiff filed his response,

Plaintiff also moved for summary judgment on his claim that Defendants breached their

duty to defend.  (Doc. # 48.)  Defendants responded on April 16, 2012, and Plaintiff

replied on May 4, 2012.  (Doc. ## 52, 55.)

---

[5]   The parties do not provide any facts concerning the underlying litigation in the period
between the filing of the underlying complaint and the settlement agreement.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 272, 248 (1986)).  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* at 670-71. In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party "to set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256.  The nonmoving party may not simply rest upon its

pleadings to satisfy its burden.  *Id.*  Rather, the nonmoving party must "set forth specific

facts that would be admissible in evidence in the event of trial from which a rational trier

of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671.  To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific

exhibits incorporated therein.  *Id.*

## III. **ANALYSIS**

### A.   **COLORADO'S COMPLAINT RULE**

Under Colorado law,[6] the construction of an insurance contract is a matter of law

to be determined by the court.  *United Fire & Cas. Co. v. Boulder Plaza Residential,*

*LLC*, 633 F.3d 951, 956 (10th Cir. 2011) (citing *Compass Ins. Co. v. City of Littleton*,

984 P.2d 606, 613 (Colo. 1999)).  Whether the insurer has a duty to defend the insured

in a lawsuit is also a question of law.  *Carl's Italian Rest. v. Truck Ins. Exch.,* 183 P.3d

636, 639 (Colo. App. 2007).

In Colorado, an insurer's duty to indemnify is distinct from its duty to defend.

*Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n.5 (Colo. 1991).  "The duty

to defend concerns an insurance company's duty to affirmatively defend its insured

against pending claims."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294,

299 (Colo. 2003) (quotation omitted).  In contrast, the:

---

[6]  A federal court, sitting in diversity, must apply the substantive law of the forum state.  *Berry &*
*Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).  Because Colorado
has the most significant relationship to the insurance policy, *see Fire Ins. Exch. v. Bentley*, 953
P.2d 1297, 1300 (Colo. App. 1998), the Court applies Colorado law.

> [D]uty to indemnify relates to the insurer's duty to satisfy a judgment
> entered against the insured. Because the duty to defend encompasses
> any potential claims raised by the facts and the duty to indemnify relates
> to the actual liability imposed, [the Colorado Supreme Court] has
> considered the duty to defend to be a broader concept than the duty
> to indemnify.

*Id.*; *see also Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996)

("The duty to defend is triggered more easily than is the duty to indemnify," and "[w]here

there is no duty to defend, it follows that there can be no duty to indemnify. However,

where there is a duty to defend, there is not necessarily a duty to indemnify.").

In order to determine whether an insurer owes a duty to defend, Colorado courts

apply the so-called "Complaint Rule." *United Fire*, 633 F.3d at 957; *Hecla*, 811 P.2d at

1089. The Complaint Rule provides that the duty to defend inquiry must be made by

looking no further than the four corners of the underlying complaint, and comparing the

complaint to the policy terms. *Cyprus*, 74 P.3d at 299; *see also Cotter Corp. v. Am.*

*Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004) ("we base such insurers'

duty to defend on the face of the complaint"); *Compass*, 984 P.2d at 615 ("Colorado

follows the rule that the duty to defend is determined by looking at the allegations of the

underlying complaint against the insured.").

An insurer who seeks to avoid its duty to defend bears a "heavy burden." *Hecla*,

811 P.2d at 1089; *Cyprus*, 74 P.3d at 297 (noting that the Complaint Rule is "designed

to cast a broad net in favor of coverage"). Thus, the "court must examine the nature of

the facts alleged and claims pled in the complaint . . . liberally **with a view toward**

**affording the greatest possible protection to the insured**." *Cyprus*, 74 P.3d at 297

(emphasis added). "The insured need only show that the underlying claim may fall

8

within policy coverage; the insurer must prove it cannot." *Id.* at 301 (quoting *Compass Ins.*, 984 P.2d at 614).

**B.    WHETHER DEFENDANTS ESTABLISHED THAT THE UNDERLYING CASE FELL WITHIN THE EMPLOYEE EXCEPTION CLAUSE OF THE POLICY**

Applying the Complaint Rule to the undisputed facts of this case, the Court finds that Defendants failed to establish that they had no duty to defend Plaintiff in the underlying case.  Defendants admit that the Policy extends coverage for damages because of "bodily injury" caused by an accident that occurred during the policy period. (Doc. # 16 at 8.)  Here, the underlying complaint sought damages from Plaintiff because of the bodily injuries sustained by Thilquist while he worked on the construction of the Dawletts' home.[7]  Thus, the allegations in the underlying complaint put Defendants on notice that the underlying complaint stated a claim that was potentially or arguably within the policy coverage.  *See Hecla*, 811 P.2d at 1089.

Defendants, however, contend that they had no duty to defend because of the Employee Exclusion Clause of the Policy which, as noted, excludes coverage for any bodily injury sustained by "an employee of any insured arising out of and in the course of . . . [e]mployment by any insured; or [p]erforming duties related to the conduct of an insured's business."  (Doc. # 16-2 at 12.)  Because the underlying complaint alleged that Thilquist was "was an employee of [Plaintiff]," Defendants argue that the Employee Exclusion Clause precluded coverage for the damages sought in the underlying complaint.

_____

[7] It is undisputed that Thilquist sustained his injuries while the Policy was in effect.

When an insurer relies on exclusions in a policy in order to avoid coverage, the insurer must "establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla*, 811 P.2d at 1090.  Thus, the insurer must show that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." *Id.*   To the extent that there is any doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.[8]  *See Sims v. Sperry*, 835 P.2d 565, 569 (Colo. App. 1992).

In this case, Defendants rely on the allegation in the underlying complaint that Thilquist was Plaintiff's employee.  However, as Defendants admit, "under Colorado law, whether an individual is an employee is a legal determination."  (Doc. # 29 at 9 n.4) (also stating that "[d]isputed legal issues, such as Thilquist's employment status in the Underlying Action, are the lifeblood of legal actions."); s*ee also Brush Hay & Mill. Co. v. Small*, 388 P.2d 84, 86 (Colo. 1963) ("In our view the issue as to whether Small was an employee of Brush Hay poses a question of law, not a question of fact."); *Brighton Sch.*

---

[8]  Placing the burden on the insurer to show that it has no duty to defend protects the insured's legitimate expectation of a defense.  Rather than refusing to defend an insured,

> [t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or file a declaratory judgment action after the underlying case has been adjudicated.

*Hecla*, 811 P.2d at 1089; *see also Bainbridge, Inc. v. Travelers Cas. Co. of Conn.*, 159 P.3d 748, 751 & 754-55 (Colo. App. 2006) (holding that insurer which believed that it had no duty to defend because prior repairs had resolved all of the property damage "should have disputed these issues at trial in its defense . . . [and] sought reimbursement . . . for its defense.").

*Dist. v. Lyons*, 873 P.2d 26, 28 (Colo. App. 1993) ("the determination of employment status is a question of law"). Thus, the allegation that Thilquist was an employee was merely a legal conclusion, not a factual allegation.

Colorado courts have held that an underlying complaint's factual allegations, not its legal claims or conclusions, determine an insurer's defense obligations. *See, e.g., Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004) ("To analyze the insurer's duty to defend, we consider whether the factual allegations in the underlying complaint trigger coverage under an insurance policy's terms."); *Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993) ("It is, however, the factual allegations in the complaint, not the legal claims, that determine an insurer's duty [to defend.]"); *Troelstrup v. Dist. Ct.*, 712 P.2d 1010, 1013 (Colo. 1986) (finding no coverage where underlying complaint against insured asserted claim for negligence but factual allegations sounded in intentional conduct); s*ee also Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011) (courts are "not required to accept as true legal conclusions that are couched as factual allegations.").

Notably, the underlying complaint was devoid of any **factual allegations** relevant to the determination of whether Thilquist was Plaintiff's employee.[9] There were no allegations, for example, as to whether Plaintiff oversaw Thilquist's work and instructed

---

[9] The absence of factual allegations supporting the legal conclusion distinguishes the instant case from cases where the insurer adequately proved that they had no duty to defend based on factual allegations in the underlying complaint. *See, e.g., United Fire*, 633 F.3d at 959 (insurance policy covered only "ongoing operations," but the underlying complaint alleged only claims related to already completed operations and provided dates when the operations had allegedly been completed); *W. Am. Ins. Co. v. Maestas*, 631 F. Supp. 1565 (D. Colo. 1986) (insurer had no duty to defend on negligence claim where the insurance policy excluded intentional acts and the insured tortfeasor allegedly bit another person three times).

him in how to perform it, paid an hourly rate, provided training and/or tools, or paid Thilquist directly for his work, instead of paying another entity.  *See* C.R.S. § 8-40-202(b) (setting forth factors to be considered in determining whether a person is an employee or an independent contractor).  Moreover, even the legal conclusion that Plaintiff was Thilquist's employer is arguably ambiguous because the underlying complaint also alleged that Thilquist was the "employee" of three different entities or individuals at the same time – Plaintiff, the Dawletts, and Mike Fink Construction. This implies that the plaintiffs in the underlying case may not have defined the term "employee" as that term is defined in Employee Exclusion Clause.  (*See* Doc. # 16-2 at 13.)

As discussed above, the Policy covered damages from claims of "bodily injury" caused by an accident that occurred during the Policy period.  Thus, the factual allegations in the underlying complaint were "potentially or arguably" covered by the Policy because the underlying complaint alleged that Thilquist suffered bodily injury during the Policy period as a result of Plaintiff's negligence.  Because the claim was "potentially or arguably" covered by the Policy, Defendants bear the burden of establishing that "the allegations in the complaint are solely and entirely within the exclusions in the insurance policy."  *Hecla*, 811 P.2d at 1090.  Given that the underlying complaint was devoid of factual allegations relating to Thilquist's employment status, and the allegation that Thilquist was Plaintiff's employee was merely a legal conclusion, Defendants have not satisfied their burden of establishing that the Employee Exception Clause barred coverage.  *See Hecla*, 811 P.2d at 1090.

The Court has faithfully applied the Complaint Rule in determining that Defendants have failed to meet their burden of establishing that the factual allegations in the underlying complaint triggered the Employee Exclusion Clause.  However, it is also significant that Plaintiff provided Defendants with extrinsic evidence regarding Thilquist's employment status, which demonstrates that Defendants could not reasonably rely on the legal conclusion in the underlying complaint.   Most notably, Plaintiff sent Defendants a copy of his subcontract with Thilquist Construction, which stated, in part, that Thilquist was an independent contractor and that no provision could be "interpreted as making either party an employee, servant, or agent for the other. . . ." (Doc. # 47-1 at 23-24.)  On November 17, 2008, Defendants authored multiple claim notes analyzing the underlying claim and the potential for coverage.  One of the notes stated, "Thilquist was not an employee of the insured; was an independent contractor; job started so quickly he didn't return the signed contract; but they did provide it to him." (Doc. # 47-2 at 35.)  Another note stated "insured had no employees only hired independent contractors who were required to have their own insurance."  (Id. at 36.) On November 18, 2008, Defendants sent a reservation of rights letter to Plaintiff summarizing the claim and stating that "[Thilquist] was an independent contractor hired by [Plaintiff] under a contract dated April 4, 2007 to frame out a single family log cabin home located in Crested Butte, Colorado." (Doc. # 47-1 at 1.)

Despite Defendants' apparent conviction that Thilquist was not Plaintiff's employee, they refused to defend Plaintiff because the underlying complaint alleged that Thilquist was an employee of Plaintiff.  Although the Complaint Rule contemplates

13

that an insurer's duty to defend is determined only by comparing the allegations in the underlying complaint with the relevant provisions of the insurance policy, the Complaint Rule is also not intended to permit insurers to avoid their obligations to their insured. Rather, the Complaint Rule is intended to "protect[ ] the insured's 'legitimate expectation of a defense.'" *Cotter*, 90 P.3d at 828 (quoting *Hecla*, 811 P.2d at 1090). By purchasing insurance, Plaintiff reasonably expected that Defendants would bear the cost of defending this action for damages which was based by bodily injury that was caused by an accident that occurred during the Policy period.   Considering the purpose of the Complaint Rule in light of the facts of this case, Defendants' reliance on the allegation that Thilquist was an employee seems to "turn this purpose on its head." *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins., Co.*, 593 F.3d 1188, 1194 (10th Cir. 2010).  Given that the Complaint Rule is intended to protect the insured, the Court does not believe that the Complaint Rule permits an employer "to refuse a defense it knows it has a duty to provide." *Id.*  As the Tenth Circuit stated in *AIMCO*, "[t]he complaint rule was never meant to be used by insurers as a shield in order to avoid a legitimate duty to defend." *Id.*

With respect to Thilquist's employment status, given the absence of any meaningful factual allegations in the underlying complaint and Defendants' knowledge that there was reason to doubt the lone legal conclusion, the Court believes the Complaint Rule would permit the consideration of extrinsic evidence that was in Defendants' possession when it decided not to defend Plaintiff.  Such extrinsic evidence supports the Court's determination that Defendants have not met their burden of

showing that they had no duty to defend in the underlying case because of the

Employee Exclusion Clause.[10]  *Hecla*, 811 P.2d at 1090.

## C.     DEFENDANTS' ALTERNATIVE ARGUMENTS

In their Response to Plaintiff's Cross-Motion for Partial Summary Judgment,

Defendants make two additional arguments as to why they had no duty to defend.  First,

they argue that Plaintiff was a "statutory employer" under the worker's compensation

scheme (which would have made Thilquist a "statutory employee"), and the Policy's

Employee Exclusion would apply.  (Doc. # 52 at 8-10.)  Second, Defendants argue that

they had no duty to defend Plaintiff even if Thilquist was an independent contractor

because Plaintiff allegedly failed to comply with the conditions of the Policy's Special

Endorsement provision.  The Court finds neither argument persuasive.

Although general contractors are sometimes considered "statutory employers"

of independent contractors for worker's compensation purposes, *see* C.R.S. § 8-41-

401(1)(a), whether or not Thilquist was a "statutory employee" is not evident on the face

of the complaint.  The test for determining whether an entity is a "statutory employer"

under C.R.S. § 8-4-401 "is whether the work contracted out is part of the regular

business of the constructive employer," and "such part of his regular business operation

---

[10]   As the Tenth Circuit has observed, "the [Colorado Supreme Court[ has never addressed whether an insurer can disregard its knowledge of facts creating a duty to defend when those facts are not alleged in the underlying complaint." *AIMCO*, 593 F.3d at 1193.  The Court acknowledges, however, that no Colorado court has carved out such an exception (or any exception, for that matter), and the Tenth Circuit has also seemed to backtrack from its inclination to carve out exceptions to the Complaint Rule.  *See United Fire*, 633 F.3d at 961 (refusing to carve out an exception to include consideration of extrinsic evidence where the insurer had knowledge of such evidence).  Given the possibility that Colorado courts would not permit such an exception, it bears emphasis that the Court did not consider the extrinsic evidence in determining that the underlying complaint triggered Defendants' duty to defend.

as the statutory employer ordinarily would accomplish with his own employees." *Snook v. Joyce Homes, Inc.,* 215 P.3d 1210, 1217 (Colo. App. 2009) (internal quotation omitted).  In this case, the  underlying complaint did not allege that Thilquist was a "statutory employee," nor did the underlying complaint include any factual allegations proving that Thilquist was a statutory employee.  As previously discussed, the underlying complaint alleged only that Thilquist was an "employee" of three different entities/individuals; and that Thilquist was installing a timber beam when he was fatally injured.  These factual allegations could be consistent with Thilquist being an employee, an independent contractor, or a "statutory employee."  Thus, the allegations in the underlying complaint are a far cry from the types of factual allegations that would enable Defendants to meet their "heavy burden" of showing that Thilquist was a "statutory employee" and that his estate's claims fell "solely and entirely" within the exclusions of the policy.  *Hecla*, 811 P.2d at 1090.  In order to determine that Thilquist was a statutory employee, Defendants would need to rely on extrinsic evidence – something they are precluded from doing under the Complaint Rule.[11]

---

[11]   In their Response to Plaintiff's Cross-Motion for Summary Judgment, Defendants point only to such extrinsic evidence – not to allegations in the underlying complaint – in support of their argument that Thilquist was a statutory employee.  (Doc. # 52 at 9.)  Specifically, Defendants cite to the Subcontract Agreement, which was not attached to or referenced in the underlying complaint, contend that the work Thilquist did was "undisputedly a routine and important part of [Plaintiff's] business," while the underlying complaint never even implicitly alleged this fact, and state that Plaintiff "was indeed Thilquist's statutory employer, as [the attorney for Thilquist's estate] originally advised Defendants," even though this conversation was never mentioned in the underlying complaint.  (*Compare* Doc. # 52 at 9-10 *with* Doc. # 2.)

Defendants' arguments regarding the applicability of the Special Endorsement also miss the mark.[12]  "An insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation.  In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy."  *Cyprus*, 74 P.3d at 299 (internal citation omitted).  Additionally, clear and unambiguous policy provisions should not be rewritten to "arrive at a strained construction."  *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748, 750 (Colo. 1990).

The Special Endorsement applies to "any claim based upon the **work performed** by independent contractors."  (Doc. # 16-2 at 6) (emphasis added.)  In the underlying case, Thilquist's estate's claim was not based on the "work performed" by Thilquist; rather the claim was based on Plaintiff's alleged negligence.  (*See* Doc. # 16-3, ¶ 25) (alleging acts by Plaintiff that "constituted an unreasonable failure to exercise reasonable care," which resulted in Thilquist's death).

Defendants seem to argue that the Special Endorsement applies because Thilquist's wrongful death claim was "based on" the subcontractor's "work" insofar as the injury giving rise to the claim occurred while Thilquist was performing work, *i.e.*, placing a large timber beam.  (Doc. # 52 at 12) ("Mr. Thilquist was working on the Project when he was injured.").  The Court finds that this is a "strained construction"

---

[12]   Although the Court recognizes that this argument was made by the Defendants as an argument "in the alternative," the Court notes that this argument, which assumes that Thilquist was an independent contractor, appears to directly contradict Defendants' contention that Thilquist was an employee.

of the plain language of the Special Endorsement.  *See Chacon,* 788 P.2d at 750.

The plain and ordinary meaning of the term "work" in commercial general liability

("CGL") insurance policies refers to the subcontractor's **work product**, rather than the

"act" of working.  *See Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d

1272, 1287-88 (10th Cir. 2011) (describing how such special endorsements for the

faulty workmanship of subcontractors were added to standard CGL policies, as

exceptions to general policy provisions that excluded coverage for claims arising from

the general contractor's own work).

At most, the Special Endorsement's language regarding "work performed by

independent contractors" is ambiguous.  However, "because of the unique nature of

insurance contracts and the relationship between the insurer and insured, [the Colorado

Supreme Court] construe[s] ambiguous provisions against the insurer and in favor of

providing coverage to the insured."  *Cyprus,* 74 P.3d at 299; *see also DISH Network*

*Corp. v. Arch Specialty Ins.,* 659 F.3d 1010, 1021-25 (10th Cir. 2011).  Accordingly, the

Court construes the Special Endorsement provision to apply to claims based only on the

subcontractors' work product, and not on the negligence of the general contractor.[13]

Thus, the Special Endorsement did not apply here, and does not excuse Defendants'

decision not to defend Plaintiff in the underlying case.

---

[13]   It makes sense that such a provision would be interpreted to protect general contractors against negligent work done by subcontractors, because when "a general contractor agrees with the owner of property to perform a specific task, he may not, by hiring an independent contractor to perform that task, escape liability . . . for damages sustained by the owner which result from the negligence of the independent contractor."  *Simpson v. Digiallonardo*, 488 P.2d 208, 210 (Colo. App. 1971).

**D.     PLAINTIFF'S MOTION TO CERTIFY QUESTION OF LAW**

Plaintiff also filed a Motion to Certify Question of Law, on December 1, 2011.

(Doc. #17).  The Motion requested that this Court certify the following question to the

Colorado Supreme Court:

> Under Colorado's complaint rule, can a liability insurer ignore unpleaded
> facts within its knowledge that would require it to provide a defense?

(Doc. # 17 at 15.)  Given that the Court has already resolved the cross-motions for

summary judgment, this request is arguably moot.  In any event, certification of

Plaintiff's proposed question would not be appropriate.

Rule 21.1 of Colorado's Rules of Appellate Procedure permits the Colorado

Supreme Court to answer a question of law certified to it by a United States district

court, if the question "may be determinative of the cause then pending in the certifying

court and as to which it appears to the certifying court there is no controlling precedent

in the decisions of the [Colorado] Supreme Court."  Colo. App. R. 21.1(a).  The decision

to certify a question is discretionary.  *See Massengale v. Okla. Bd. of Examiners in*

*Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994); *Soc'y of Lloyd's v. Reinhart*, 402 F.3d

982, 1001 (10th Cir. 2005)  ("[U]nder the diversity statutes the federal courts have the

duty to decide questions of state law even if difficult or uncertain.")  Certification may be

appropriate "where the legal question at issue is novel and the applicable state law is

unsettled."  *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990).

Here, the issue of whether an insurer may ignore extrinsic evidence in deter-

mining whether it has a duty to defend is not determinative because the Court finds

that Defendant had such a duty, even without consideration of such extrinsic evidence.

19

Thus, the question that Plaintiff asked the Court to certify would not be "determinative" of the claims in this case.  Therefore, Plaintiff's question, if certified, would require the Supreme Court to render what would be essentially an advisory question.

## IV.  CONCLUSION

Based on the evidence in the record, it is ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. # 48) is GRANTED and Defendants' Motion for Summary Judgment (Doc. # 16) is DENIED.

It is FURTHER ORDERED that Plaintiff's Motion to Certify Question of Law (Doc. # 17) is DENIED.

DATED:  September __27__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge